Thank you, Your Honors. Eric Slepian. I appreciate you accommodating your schedule. I was just at an oral argument upstairs. I'm going to attempt to hold two minutes for rebuttal. This is a case where Mr. Willyard sought disability benefits as of January of 2006. Prior to that time, he had worked consistently since age 17. He posted quarters in every year for 35 years. He started developing some back pain prior to January 2006, got into medical treatment. Unfortunately, in January, he had a stroke, not just a little stroke, a big stroke. Objective evidence shows that there's a moderately large subcortical right perianatal occipital infarct. He was hospitalized. Do I have to? No, I can. Very impressive, actually. I was reading from my notes, Judge. He went into rehabilitation, released to his family. For a while, he was on family-only watch and started to try to regain some of his normal function while he remained in treatment for his back pain. Counselor, it's my understanding, which may shortcut a little bit about what you're about to say, that his disability onset date is January 20th of 2006. Exactly. And the first time he sought benefits was after the stroke, even though he'd had a back injury in 2004. Absolutely correct. All right. I got it. So I'm just trying to shortcut what you're trying to tell me. So let's hit the issues. All right. So let's talk about Mr. Williard's credibility. Okay. Hard worker. Obviously very severe medical problems. Goes to his doctors. Even before disability, he's having MRIs. He's having nerve conduction studies. They confirm that he's got cervical radiculopathy. He keeps going to his doctors. They confirm that he's got lumbar radiculopathy. He keeps going to the doctors. They talk about doing a fusion or an IDEP procedure. They end up finding that there's no actual lesion that they can do surgery on. And due to ongoing, unrelenting pain, he opts for the IDEP procedure. That's his history. I mean, it's all consistent. So why does the judge disbelieve him? He obviously has testified to restrictions that would preclude sustained work. He has difficulty sitting, standing, walking, trouble with his memory and concentration, and keeping up with a regular pace. So the first thing the judge says is he doesn't believe him because his complaints are inconsistent with the objective data. He has a brain injury. He has herniated disc. He has nerve conduction studies showing impingement on nerves. So his ‑‑ Let me just ‑‑ Yes. At least from my perspective, you cut to the chase. The ALJ discounted Dr. Levine, his primary treating physician's evidence. He was ‑‑ I guess he was an orthopedic surgeon or something like that. Correct. And he had an MRI that was objective medical evidence, which seems to have been ignored. If that's right, and given the case law, does that in and of itself mean we have to reverse and send it back, or what do we do? So once we find that an ALJ failed to provide sufficient reasons for rejecting a treating physician opinion, we have to see what the appropriate remedy is going to be. In this case, the record has been fully developed. If we credit Dr. Levine's testimony as true, he's clearly disabled. There don't seem to be any significant inconsistencies that need to be resolved. So based on garrison, it would be an abuse of discretion not to remand this for a computation of benefits. The only exception is if there is serious doubt of disability. In this case, there is no serious doubt of disability. This man did everything he could. Well, just a minute, let's talk about that. Well, first of all, it seems to me Judge Smith was going whether there were sufficient reasons for rejecting the physician's testimony. And I guess I'll be glad to talk to the government about that. But in this particular record, there are state opinions which disagree with the opinion of Dr. Levine, correct? Yes, Your Honor. So if there are state opinions that disagree with the opinion of Dr. Levine, the only reason why the ALJ got to where he got is because he did not give sufficient import to the opinion of Dr. Levine, correct? That is one of the reasons, yes, Your Honor. Well, he had to give sufficient reasons for rejecting it. And if he did use Dr. Levine's testimony, he would not have necessarily come out where he is. I guess my biggest problem with what you just said, and that's the only reason I spoke up, it doesn't seem to me that one can say there is no evidence in the record which would suggest that he should not be given the benefits. So what we're really talking about is, did the ALJ err when failing to provide sufficient reasons for rejecting the P's subjective complaints? If we say yes, did he err when he failed to provide sufficient reasons for rejecting the physician's testimony? If we say yes, I'm not sure the argument about the chiropractor's opinion isn't waived. But even in those circumstances, it seems to me that under our standard, we would still remand to have the ALJ look at this once again, given that he has not failed to provide the sufficient reasons for either rejecting the plaintiff's subjective complaints, or the physician's testimony, and then decide what to do. Because there is evidence on the other side. Let me explain to you why that outcome would be incorrect, Your Honor. So when we look at an individual's subjective complaints, right, let's assume the ALJ made mistakes and it has to be reversed. So what's the standard for rejecting an individual's stated complaints? Here there's no evidence of malingering. It has to be clear and convincing. If you find that there are inconsistencies, but that there are not clear and convincing reasons for rejecting a claimant's subjective complaints, there's no reason to send it back, because they can't meet that standard. Same thing with Dr. Levine. So if there's no conflict in medical signs and symptoms, which I don't believe there are, then his opinion's entitled to controlling weight. Let's assume there is a conflict in medical symptoms and signs. His opinion is entitled to deference. It can only be rejected for clear, specific, and legitimate reasons supported by substantial evidence in the record. And if you look at SSR 96-2P, it clearly states even if a treating physician opinion is conflicted by other medical opinions, the treating physician opinion is entitled to weight. And that has to do with 20 CFR section 404, 1527C, which talks about the importance of the treating physician relationship. And we look at the case of Lester, which talks about the importance of weighing a treating source's subjective judgments. When we use the legal standards to evaluate this evidence, there's no serious doubt of disability in this case. Well, let's examine this just a little bit. Let's suggest, let's say that I agree with you that the ALJ did not provide specific reasons for rejecting the plaintiff's subjective or complaints. It seems to me that one of the reasons, in fact a big reason I might be with you on that, is because there was no clear and convincing reason. It seemed to me that it was just little or nothing in the record to support the claimant's claims. That's not enough. If, in fact, there are clear and convincing reasons for the ALJ to make his determination, which is something the ALJ can decide, not me, why is it that I am then going to say because the ALJ didn't provide all of the reasons clear and convincing the first time that he automatically gets benefits? Instead, I should remand for the ALJ to say, hey, you didn't give us anything, you better look at this again. So when we look at the credit as true rule, and I'm assuming for the purposes of our discussion here, we're going to assume that all the parts are met and we're only talking about whether there's serious doubt of disability. So, again, when we look at these subjective complaints, if they're not, because we've agreed the judge is wrong, so now someone's searching. Just a minute. We haven't agreed the judge is wrong. We've agreed that the judge did not provide the clear and convincing reasons he needed to support his findings. Correct. That's correct. That was the emphasis of my question. I understand. So this Court routinely reviews those kind of decisions to see if ALJ findings are clear and convincing. Under the credit as true rule, the Court's really not supposed to go through and redo this entire thing, but I understand that the Court does. If you look at Garrison and you look at Burrell, we're not supposed to, but the Court does. So if the Court's going to do that and the Court sees conflict, if in the Court's mind it doesn't see it as clear and convincing, why waste the time? Under Beneke, they're not entitled to just a redo. They can't just say, you know what, we made a mistake. We think an administrative law judge is in the better position to do this. Beneke says the exact opposite. And then when we get to Garrison, it's clarified. Serious doubt of disability. Not doubted disability. Serious doubt of disability. And, you know, I do point out, he's been found disabled, and as of one day after the prior decision, and to remand this for further proceedings, I don't know how much good that's going to do, because as the Court's aware, he's deceased now. He fell down a flight of steps, injured his head, and passed away. So I don't know what the point would be to send this back for additional proceedings. What happens in that situation? Are the benefits that would have been payable in the interim payable to his heirs? Is that what happens? I'm going to just correct you on the term heirs. So there are certain individuals that are eligible to substitute in. A spouse and children would be acceptable. So they substitute in just like they would in the normal? Right, right. But it may not apply to cousins, things like that. But, yes. I see I have 2 minutes and 50 seconds left. I'd like to reserve it. There is nothing to reserve. I'm just kidding. Thank you. Go ahead. Reserve it. Let's hear from the government. Good morning, Your Honors. May it please the Court, I'm Laura Holland, and I represent the Commissioner. This case is about an individual who undoubtedly had some work-related limitations. But the ALJ found that the severity of his claimed limitations was not consistent with the medical record. Counsel, let me just ask you right off about Dr. Levine. He was the treating physician. The ALJ did not credit him. Why not? And how do we treat that? Yes, so Dr. Levine was one of many treating physicians in this case. It was his primary treating physician, wasn't he? One, Your Honor. Who else besides Dr. Levine? He had numerous doctors who treated him throughout the time period. Dr. Wang is another one. Dr. Stout, I believe. Oh, I'm sorry, Dr. Dowst. Basically, the record shows that Mr. Williard started presenting with complaints of back pain in relation to a worker's compensation claim prior to his alleged onset date in this case, and he went to numerous physicians repeatedly throughout the relevant time period. Dr. Levine was one of those. Well, just a second, Counselor. I was very interested what you were going to respond to what Judge Smith asked you. It seems to me that there was, at a certain date, a stroke over and above what he'd had before. That stroke was January 20, 2006. The first time he sought benefits was after that stroke. It didn't have anything to do with what happened with his back from 2004 to that point. What are the doctors you're looking at which were his treating physicians from the time he had the stroke until now? Okay, so he saw Dr. Levine. That's why I think Judge Smith said, I don't know what doctor we're really going to look at for his treating physicians except Dr. Levine, because Dr. Levine was the treating physician since the stroke. Right, and he also saw, as I point out in my brief, one of the reasons DLJ gave for discounting Dr. Levine's opinion is that his opinion was not consistent with the other doctors who treated Mr. Williard through the time period. And what he was saying was that Dr. Levine's opinion was not consistent with what the doctors had said before the stroke, which to me was some concern. We didn't even have the stroke on the books when we had these other doctors giving their opinions. Well, you do have in the record him seeing Dr. Wang after the stroke, and you do have in the record him seeing Dr. Bardwaja after the stroke and Dr. Kayata after the stroke. So there were a number of doctors who were making findings and treating him after the stroke, and their findings were not always consistent with Dr. Levine. Isn't that right? That's correct, and I would point out that most of the medical record in this case post-dates the stroke, which is the onset date here. So almost all of the... Do the state opinions post-date the stroke? Yes, Your Honor, because the state opinions weren't even triggered until he filed for disability, which was after his stroke. Right. So Dr. Kayata, I believe, Dr. Kayata believed that the best thing for Mr. Williard was to return to full-duty work after the stroke. Dr. Song, who treated Mr. Williard, also believed that he could return to work without restriction, except for lifting as tolerated. So there were other treating doctors in the record who had found contrary to Dr. Levine, and the ALJ... I agree with you on that. I think there are a lot of other doctors and a lot of findings, but did the ALJ give sufficient reasons for rejecting Dr. Levine's conclusions at the end of the day? He really seems to me didn't because he said there was no objective evidence to support it, and that clearly can't be right. There are some objective items in the record. It may not be convincing, but he seemed to not address them, not deal with them. Well... And then, of course, he rejected the subjective complaints of Mr. Williard. So this is why the concern is did he give sufficient reasons, and do you defend that? Do you think he did? Yes, certainly, Your Honor. The reasons he gave for rejecting Dr. Levine's opinion, and it's not that he – not that the ALJ found that there weren't objective medical tests of record to support some of Mr. Williard's claims. It's that he says, the ALJ says, quote, none of the imaging, EMG, range of motion, or other objective evidence supports such extreme functional limitations, as Dr. Levine set forth in his opinion, that the individual could not even lift 10 pounds, which was essentially what Dr. Levine had opined. And if you – the other primary reason the ALJ gave for discounting Dr. Levine's opinion was that it was inconsistent with his own treatment notes and his own examination findings. If you look at Dr. Levine's treatment notes, he treated Mr. Williard a handful of times, and the only two times his notes show that he actually performed a full examination of Mr. Williard, one is March 9th of 2007, where, you know, again, after the stroke, well after the stroke, you know, and the commissioner doesn't argue that Mr. Williard was incapacitated for ‑‑ His assessment that day was probable discogenic back pain, right? Certainly back pain, but if you look at his examination findings at ER 918, the patient has full range of motion of the lumbar spine, sustained flexion and extension reproduces his symptoms, but straight leg raises are unlimited bilaterally, equal leg strength, equal reflexes. Well, I understand that, but then three weeks later, the CAT scan shows narrowing of the disc space, degenerated disc disease, so it's a mixed picture. And again, the ALJ did not find that this was an individual without limitation. The ALJ found that this individual during the relevant time period could perform a range of light work, meaning he could lift up to 20 pounds occasionally and 10 pounds frequently and had limited abilities to reach. What about the ALJ's rejection of the credibility of Mr. Williard? So the ALJ gave, I would say, three primary reasons for rejecting Mr. Williard's complaints. And again, the ALJ rejected the severity of the complaints, not that this individual had some limitations. The ALJ found he had some limitations, but the ALJ found that there was a lack of objective medical evidence, again, to support the severity of his claims. That's circular. Right. But that is one reason under the regulations that ALJs can look at. The other reasons were his, he, Mr. Williard gave some inconsistent statements throughout the course of the relevant time period. Of course, one of those statements he says he never made. He said somebody recorded it, and he said it may not have been accurate, and he didn't say it. Yeah. It's a third-party statement. He says that now, Your Honor. He claims for the first time, really, in his reply brief that he did not make that statement. But I would point the Court to his district court brief where he says, quote, the cited report was completed by Mr. Williard at the Social Security local office. And that's at Supplemental Excerpt 29, which I filed. So at the district court, he, for all intents and purposes, admitted that he made that statement. But in, and he also claims in his reply brief to this Court that the report in which that statement is campaigned, the statement we're talking about is that he was almost bedridden. Certainly, it was completed and signed by an agency employee. But the statement is, in fact, written in the first person. And he claims that it's written in the third person. But when he claims that, he cites to ER 131, which is actually Exhibit 4E, which is an entirely different exhibit, than this statement that he was almost bedridden was made, and that's in Exhibit 5E. And so the ALJ found that this statement that he was almost bedridden was inconsistent with other evidence of records. He reported to his mental health providers that he gardened and swam. He reported in other signed statements to the agency that he prepared meals daily for two to three hours, did laundry, vacuumed with difficulty, cleaned for three hours per week, went outside every day, grocery shopped once a week, and could walk one mile. So the ALJ found that his statement that he was almost bedridden was contrary to other statements he had made, both to the agency and to his providers, and that is a clear and convincing reason under this Court's law to discount his statements. Since I've addressed the medical opinions and the credibility, I'll turn to the remedy issue. Should the Court disagree with the Commissioner's position that the ALJ's finding is supported by substantial evidence? The Commissioner's position is that the Court should not credit either Mr. Williard's statements or Dr. Levine's opinion as true and should instead remand for further proceedings. Tricler, which I submitted to this Court in a 28-J letter, was authored after the briefing was done in this case. And under Tricler, the primary thing that the Court should look at is whether there are any outstanding issues that need to be addressed before a finding of disability can be made. And the Commissioner submits that the reasons I've already talked about today are outstanding issues. As I said, some of Mr. Williard's treating doctors thought that the best thing for him to do would be to return to full-duty work. That entirely undermines Dr. Levine's very extreme opinion. There are inconsistencies in Mr. Williard's statements, so you can't just take some of the statements that he was almost bedridden and credit those when there are other statements that I had just stated that detract from his claims regarding the severity of his limitations. And also, again, the lack of objective evidence to support the severity of his claimed limitations. So all of these facts raise serious doubt as to whether he is in fact disabled during the relevant time period. Unless the Court has any more questions? In sum, I gather the Commissioner is saying we recognize that he had issues, but Dr. Levine's testimony was so extreme that, like the ALJ, we should discount that. What other people talked about was more in accordance with a man who had issues, but not to the level that Dr. Levine said. That's exactly right, Your Honor. And, you know, I would just – Dr. Wang's – Dr. Wang's and Dr. Dowse's and Dr. Song's treatment notes, if the Court looks at those treatment notes and they're cited in our brief, they do not support the extreme limitations set forth in Dr. Levine's opinion. Do my colleagues have any other questions? I think not. No. Thank you very much, counsel. We'll hear rebuttal from counsel for the appellant. Thank you, Your Honor. I want to talk about the claim that there's conflicting State agency medical opinions. So those opinions are from physicians who never treated and never examined Mr. Williard. Now, if we look at the case of Rounds – I do have that cite if you need it – it says that treating this type of an opinion as an opinion is strained. It's hard to imagine that somebody can look at a medical record and they didn't look like that very much of a medical record. Let me be sure I understand. You're saying that, with the exception of Dr. Levine, that the other physicians who opined never actually dealt with, didn't see the physician, or what are you saying? Okay. So the judge gave greater weight to those physician opinions, the ones who didn't see them. No. There's a confusion here. You're talking about the State doctors, not the other treating doctors. Right. I'm talking about the State doctors. Okay. The earlier ones. Okay. Thank you. No, no, no. Okay. And I'm worried, Counselor, I mean, I'm worried that you're spending a lot of energy on those State doctors when what the government has said is there are treating physicians who are treating physicians just like Dr. Levine, and Dr. Levine's premises or his conclusions disagree with those treating physicians. Okay. So let's focus... And that, therefore, we ought not just grant benefits. Okay. So let's focus on those particular opinions. None of them say how long he can sit, stand, walk, lift, or carry. And there's just that one line in one report that says that he should be able to return to work. That's all we're looking at. Well, no, but many of them have no objective findings at all. That's the problem. They examine him and say we don't find this, we don't find that, we don't find... Let me address that, okay, because the lack of objective findings that they're citing to are claimed full range of motion, lack of reflex loss, things like that. But what we know, because nerve conduction studies don't lie, is that he has nerve involvement of the cervical and the lumbar. And we know that can cause pain. There's no doubt the man has pain. The question is the extent of his disability, the severity of his disability. What these other folks are saying with these objective tests is he may have pain. In fact, they're prescribing pain medication. But they're saying he can do this and he can do that and, you know, what he still can do is important. If we agree he has pain, right, then you cannot just reject evidence of limitations based upon a failure of the objective evidence. No, no, it's the extent of limitations. Right. We can't reject the extent of limitations based upon a claim that the objective evidence does not fully establish those limitations. The straight, you look at Cotton v. Bowen and you just go down. It's a reaffirmed, reaffirmed, Regeneter, Lester, Orn, that we can't just say because of the objective evidence we're going to reject this, because then what's the point of having a treating physician? What's the point of getting claim and testimony? Once we, the cases call it excess pain claims. If it's believed that he has excess pain, which I don't, but if it is, then we have to find other evidence in the record to substantiate it. We can't just look at the objective data. I mean, that's just how, even the regulations state that. If you look at 1527.9 or if you look at SSR 96-77P, it all says the same thing. You cannot do that. And so, you know, I want the Court at least to keep that in mind. The other thing I would. Wrap up your. Okay. Really quickly. So the judge had him at light. If he was at sedentary, he would grin out based on the second judge's findings and be entitled to his benefits. And then, obviously, there's a skill issue, which we brought, but I'm not going to discuss that now. I would just highlight the note that there's no evidence of exaggeration or malingering. This man went through a lot. Sending it back to further proceedings when he's already been granted benefits and he's deceased just seems like it would be futile. And I would point you to Beneke on those points. Thank you. Thank you both, counsel, for your argument. It was very helpful. And the case just argued is submitted and the Court is in recess. Thank you. All rise. This court is adjourned.
judges: M. Smith, N.R. Smith, Scheindlin